The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Shuping. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives, or amend the Opinion and Award.
These matters, which not only involve the admittedly compensable right elbow injury that was the subject of prior industrial Commission Awards in I.C. File Number 147760, but occupational disease claims for carpel tunnel syndrome and dorsal wrist synovitis of the same hand, were heard in part by Deputy Commissioner Shuping on 23 February 1994 in Carthage. Prior to hearing each of the parties submitted a proposed Pre-Trial Agreement, which are hereby incorporated by reference as if fully set out herein and where when taken together and any conflicts resolved they agreed to certain jurisdictional and other factual stipulations. By subsequent Order the parties were allowed a reasonable period of time to obtain, either by deposition at defendants' expense or stipulated report, the medical evidence necessary to complete the record and have since not only deposed Drs. Brenner and Burrows as well as agreed to stipulate their medical records, but have submitted Statements of Contention; therefore, this matter stands ready for appropriate final disposition and for the purpose thereof each of the Industrial Commission's prior awards in I.C. File Number 147760 are hereby incorporated by reference as if fully set out herein.
Based upon the competent evidence adduced at the hearing and the submittals of counsel on appeal, the Full Commission adopts and makes the following additional:
FINDINGS OF FACT
1. Plaintiff is a right-handed, 39 year-old female who has a college degree as well as training as a nurse's assistant resulting in her being certified as a level II nursing assistant, but because of the permanent right arm injury involved would be unable to handle the physical demands of a nursing assistant.
She has never been terminated from defendant JPS Carpet Corporation's employ, but rather, remains an inactive employee still then able to maintain coverage through her employer's health insurance plan as well as subject to being called in to perform the type of light duty work required by her permanent arm injury. Because of a dispute that has arisen between the two carriers as to which, if either, is responsible for the disabling right arm problems giving rise hereto plaintiff's employment status, and whether she should attempt to seek vocational rehabilitation on her own, remains in limbo. Defendant-employer, however, has not offered to provide plaintiff vocational rehabilitation services to enable her to obtain the type of light duty work she requires not since February 1993 has the same employer been willing, or able, to provide her light duty work, which it previously had, because of plaintiff's inability to return to her regular fixer's job in the tufting department or any of the other production jobs she had prior to developing the disabling right arm problems giving rise hereto, which involve the same type of strenuous or repetitive hand use she is no longer capable of.
2. Since November of 1975 plaintiff has been employed by defendant JPS Carpet Corporation and has worked as a creeler, mender, tufting machine operator, carpet inspector, cut order machine operator, section leader in cut end and fixer in the tufting department, which she was doing at the time of developing the right arm problems giving rise to the involved claims.
3. As a fixer plaintiff was responsible for maintenance and repair of the machinery and equipment not only requiring her to use various hand tools including hammers, screwdrivers and wrenches but requiring repetitive and strenuous forceful use of her dominant right hand and arm.
4. In the process of repairing a tufting machine on October 19, 1990, plaintiff struck her dominant right elbow on the corner of a center frame piece, sustaining the admittedly compensable right elbow injury that was subject of the Industrial Commission prior awards in I.C. File Number 147760 and as the result of the same injury developed carpel tunnel syndrome and lateral epicondylitis (tennis elbow) requiring her to twice undergo corrective elbow surgery.
5. These matters not only involve the above-described admittedly compensable right elbow injury, but occupational disease claims for carpel tunnel syndrome and dorsal synovitis of plaintiff's dominant right wrist or hand due to the repetitive and strenuous forceful use of the right hand required by her regular fixer's job in defendant-employer's tufting department, which diseases or conditions are characteristic of and peculiar to the same occupation, trade or employment, wherein, as compared to member s of the general public and other employment at large, there is an increased risk of developing these same diseases or conditions.
6. Plaintiff's arm initially went numb when she struck her elbow and thereafter it not only became painful, but she developed numbness and tingling in her fingers resulting in difficulty sleeping, which are classic symptoms of carpel tunnel syndrome (See Dr. Brenner's Stipulated handwritten office note where he refers to plaintiff's symptoms being "classic.")
7. Despite her symptoms plaintiff was able to continue regularly working until she went out of work in November for unrelated surgery before returning to work around the first of the year (1991). In the interim, her condition had not improved and when she returned to work plaintiff was still experiencing significant problems with her dominant right arm and hand due not only to her admittedly compensable October 19, 1990 right elbow injury, but to the carpel tunnel syndrome that she had developed in her dominant right hand and wrist due to the manner that she was required to repetitively and strenuously forcefully use the same hand in the course of her regular work as a fixer in the tufting department.
8. Ultimately in February of 1991 plaintiff sought medical treatment for her wrist and elbow problems from Dr. Mark Brenner, a Pinehurst orthopedic surgeon, who initially attempted a conservative course of treatment consisting of splinting, medication and cortisone injections, and plaintiff was able to continue her regular fixer's job requiring repetitive and strenuous forceful use of the affected hand and arm.
9. When her condition did not improve on July 3, 1991 Dr. Brenner performed corrective surgery in the nature of a carpal tunnel release of her right hand and wrist and carpel tunnel release and lateral epicondylectomy of her right elbow.
10. During the period that she was out of work for her surgery from July 3, 1991 to August 5, 1991 plaintiff was compensated for her resulting temporary-total disability under the Industrial Commission's initial award in I.C. File Number 147760.
11. On August 5, 1991, plaintiff returned to work for defendant-employer performing her regular fixer's job in the tufting department, again requiring repetitive and strenuous forceful use of her dominant right had and arm, which not only caused continuing hand problems, but ones with her right elbow resulting in her again being out of work during the period from January 2, 1992 to January 6, 1992 and was compensated for her resulting 4/7 weeks of temporary-total disability under the Commission's last award in I.C. File Number 147760.
12. On January 6, 1992 plaintiff again returned to work for defendant-employer as a fixer and not only continued to experience right arm and elbow problems, but developed dorsal synovitis in her right wrist, likewise due to the repetitive and strenuous forceful use of the right hand required by her regular fixer's job in the tufting department.
The synovium is the tissue within the joint that produces a lubricating fluid and in the case of repetitive motion disease results in proliferation and thickening of the synovium producing extra fluid filled cysts or ganglions. In her particular case plaintiff developed synovitis in the wrist joint between the small bones of the wrist and distal radius.
13. Because of her continuing wrist and elbow problems on May 4, 1992 Dr. Brenner performed a second corrective surgery in the nature of a fascial band reconstruction of the right ulnar nerve due to the right elbow injury sustained on October 19, 1990 and a synovectomy of the right wrist due to the dorsal wrist synovitis that she had developed from the repetitive and strenuous forceful use of the same hand and wrist required by her regular fixer's job.
As between the respective carriers, plaintiff was last injuriously exposed to the hazards of dorsal synovitis during the period from August 5, 1991 to May 4, 1992 while Home Insurance was the carrier on the risk because plaintiff's continued repetitive strenuous and forceful use of her dominant right hand and wrist in the course of her regular fixers job augmented the same condition ultimately requiring corrective surgery.
14. As a result of undergoing the same surgery plaintiff was out of work from May 4, 1992 to June 10, 1992, for which she has not received compensation benefits because of the dispute that has arisen between the respective carriers. The period that plaintiff was out of work for her elbow injury that is the responsibility of defendant-carrier Liberty Mutual Insurance Company and dorsal wrist synovitis that is the responsibility if the defendant-carrier Home Insurance Company because plaintiff was last injuriously exposed to the hazards of the same disease or condition while it was on the risk.
Because both conditions contributed to plaintiff's resulting period of disability from May 4, 1992 to 10 June 1992 and there is no evidence of record that would tend to allocate the same period of disability between either condition, the fairest manner of doing so is to require the respective carriers to be equally responsible for payment of the resulting compensation due. For similar reasons, unless they are able to have either Dr. Brenner or any other medical providers involved allocate the resulting cost of plaintiff's surgery between her elbow and wrist injuries, the respective carriers should be equally responsible for the resulting medical expenses associated with the same surgery.
15. Although she was no longer able to return to her regular fixer's job and never got complete relief from her arm pain after either surgery, by June 10, 1992 plaintiff had sufficiently recovered from her second surgery so as to be able to return to a light duty job no longer requiring repetitive or strenuous forceful use of her dominant right arm and, other than a two week period she was assigned to a job using a label gun causing her a great deal of increased problems, defendant-employer was able to provide plaintiff with suitable light duty work including office jobs and one on the floor supervising until February of 1993.
16. In February of 1993 defendant-employer requested that plaintiff, who had done the same job years earlier, return to a production job as a tufting machine operator. At her request, however, defendant-employer allowed plaintiff to return to the regular fixer's job that she had been doing because it was no more physically demanding, was one that she was more familiar with and had been able to adapt despite her arm and wrist problems.
17. Unlike the type of lighter office work that she had been doing that did not cause her significant wrist problems other than when doing a lot of hand writing; the fixer's job required repetitive and strenuous forceful use of her right arm resulting in her developing significant wrist problems requiring her to return to Dr. Brenner on March 10, 1993, and he restricted her to one-handed work.
18. Initially Dr. Brenner attempted to treat plaintiff's disabling wrist condition conservatively by immobilization; however, when her condition did not improve he performed further corrective surgery on May 24, 1993 in the nature of an arthrotomy, debridement of the scapholunate ligament, and occult ganglion extending from the same ligament and disruption of lunotriquetral ligament disruption.
19. On or about February 20, 1994 when Dr. Brenner rated her for permanent partial disability plaintiff ultimately reached maximum medical improvement and/or the end of the healing period from and following her October 19, 1990 right elbow injury and the right wrist problems she developed due to the repetitive and strenuous forceful use of the same hand required by her regular fixer's job, at which time she retained a twelve (12) percent permanent-partial disability of the right upper extremity as a result of the same conditions.
20. Although five of her twelve (12) percent permanent partial disability is attributable to plaintiff's right elbow injury; after twice undergoing corrective elbow surgery she no longer experiences significant problems with her right elbow,; but rather, the significant, and incapacitating problems that plaintiff now has are a result of her dorsal wrist synovitis, which, as previously stated, is due to the manner that she was required to repetitively and strenuously forcefully use her dominant right hand and wrist in the course of her regular fixer's job.
As previously stated, plaintiff was last injuriously exposed to the hazards of the same disease or conditions after defendant-carrier Home Insurance Company came on the risk on June 1, 1991.
21. As the result of the same chronic right wrist problems from her dorsal wrist synovitis plaintiff remains unable to return to her regular fixer's job or any other job similarly requiring repetitive or strenuous forceful use of her dominant right hand; but rather, is only capable of the type of light duty work that defendant-employer provided prior to February of 1993 and is now unwilling or unable to provide.
22. The job that defendant-employer offered plaintiff in December of 1993 as a latex range assistant operator was not a suitable one because it required her to lift as much as 10 pounds as well as to climb a ladder, which she admittedly cannot do with her injured right wrist,, and is heavier than either the fixer's or tufting machine operator's job, which are similarly unsuitable because they require the type of repetitive and strenuous forceful use of the dominant right wrist plaintiff is no longer capable of.
* * * * * * * * * * * * *
The foregoing stipulations and findings of fact engender the following
CONCLUSIONS OF LAW
1. On October 19, 1990 plaintiff substained an injury by accident arising out of and in the course of her employment resultiry byng in the disabling right elbow injury that was not only subject of two prior Industrial Commission Awards in I.C. File Number 147760 compensating her for her resulting periods of temporary-total disability from July 3, 1991 to August 5, 1991 and from January 2, 1992 to January 6, 1992; but requiring her to under go elbow surgery on July 3, 1991 and May 4, 1992. G.S. §97-2(6); G.S. 97-29.
2. Due to the manner that she had to repetitively and strenuously forcefully use her dominant right hand and wrist in the course of her regular fixer's job in defendant-employer's tufting department plaintiff developed disabling carpel tunnel syndrome as well as dorsal synovitis in the same wrist or hand, which diseases or conditions are characteristic of and peculiar to the same trade, occupation or employment, but excluding all ordinary diseases of life to which the public is equally exposed outside of that employment. Thus plaintiff has developed compensable occupational diseases pursuant to the provisions of G.S. § 97-53(13).
3. Plaintiff developed her carpel tunnel syndrome prior to June 1, 1991 when defendant-employer Liberty Mutual Insurance Company was still on the risk and thus responsible for her resulting medical expenses and disability. The Full Commission further assumes that defendant-carrier Liberty Mutual Insurance Company paid the cost of plaintiff's carpel tunnel release surgery because Dr. Brenner performed it at the same time he did elbow surgery for the disabling compensable right elbow injury giving rise to plaintiff's current claim in I.C. File Number 147760.
Based on her admittedly compensable right elbow injury plaintiff received compensation during the period she was out of work following her elbow and wrist surgeries on July 3, 1991 and was not subsequently disabled by her carpel tunnel syndrome; but rather, by the dorsal synovitis that she developed in the same hand or wrist after defendant-carrier Home Insurance Company came on the risk.
4. Plaintiff was last injuriously exposed to the hazards of dorsal synovitis after defendant-carrier Home Insurance Company came on the risk when she continued to work as a fixer in the premises tufting department.
5. In February of 1992 when Dr. Brenner rated her for permanent partial disability plaintiff reached maximum medical improvement and/or the end of the healing period from and following the right elbow injury giving rise hereto and occupational diseases carpel tunnel syndrome and dorsal synovitis giving rise hereto, at which time she retained a twelve (12) percent permanent-partial disability of the right upper extremity.
Although five of the same twelve (12) percent permanent partial disability was the result of her October 19, 1990 right elbow injury entitling her to 12 weeks of compensation at a rate of $245.61 per week, whose payment is deferred pursuant to the provisions of G.S. § 97-34 while she continues to receive compensation benefits for the compensable dorsal synovitis that she subsequently developed; after twice undergoing corrective surgery for the same injury plaintiff was no longer experiencing persistent significant problems from the same injury; but rather, her current disability is due to her problems with her right wrist from dorsal synovitis.
6. As a result of her dorsal synovitis plaintiff has remained totally disabled since March 10, 1993 entitling her to compensation at a rate of $245.61 per week from March 10 1993 to the scheduled hearing date and thereafter continuing at the same rate so long as she remains totally disabled. G.S. § 97-29.
7. Although after undergoing further corrective surgery for the resulting wrist problems from her dorsal synovitis on May 24, 1993, plaintiff was capable of returning to light duty work not requiring her to engage in the type of repetitive and strenuous forceful use of her dominant right hand and wrist that her regular fixer's job in the tufting department did or had all the other production jobs that she had previously done there; defendant-employer was no longer willing, or able, to provide her the type of light duty work required after February of 1993.
8. As a result of the further corrective surgery that she underwent on May 4, 1992 for her admittedly compensable right elbow injury and her dorsal synovitis plaintiff was temporarily totally disabled from May 4, 1992 to June 10, 1992 entitling her to compensation at a rate of $245.61 per week, which the respective carriers shall pay on a share and share alike basis for the stated in the above Findings of Fact.
* * * * * * * * * * * * * * *
The foregoing stipulations, findings of fact and conclusions of law engender the following
AWARD
1. In I.C. File Number 249857 defendant and its carrier Home Insurance Company shall pay plaintiff, on account of her continuing total disability, compensation at a rate of $245.61 per week from March 10, 1993 to the scheduled hearing date and thereafter continuing at the same rate so long as she remains disabled.
On a share and share alike basis defendant-carrier Liberty Mutual Insurance Company and Home Insurance Company shall pay plaintiff, on account of her temporary-total disability, compensation at a rate of $245.61 per week from May 10, 1992 to June 10 !992. Such compensation as has accrued under the instant award shall be paid in lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. At this time a reasonable attorney fee in the amount of twenty-five (25) percent of the accrued compensation benefits due under the above award is hereby approved for plaintiff's counsel. which shall be deducted from the same award and forwarded directly thereto. For the balance of his fee defendant-carrier Home Insurance Company shall forward every fourth check payable under the same award directly thereto.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide relief from and/or lessen the period of disability associated therewith defendant-employer and its carrier Liberty Mutual Insurance Company shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of her right elbow injury giving rise hereto and carpel tunnel syndrome when bills for the same are submitted on proper forms, through the same carrier, to the Industrial Commission for approval and are approved by the Commission.
4. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendant employer and its carrier Home Insurance Company shall pay all reasonable and necessary medical expenses incurred as a result of her dorsal synovitis giving rise hereto when bills for the same are submitted on proper forms, through the same carrier, to the Industrial Commission for approval and are approved by the Commission.
5. Unless the respective carriers are able to have Dr. Brenner and the other medical providers involved allocate the amount of plaintiff's May 4, 1994 surgery between her elbow and wrist problems, they shall be equally responsible for the same expenses.
6. In I.C. File Number 147760 defendant-employer and its carrier Liberty Mutual Insurance Company shall bear the costs. In I.C. File Number 249587 defendant-employer and its carrier Home Insurance Company shall bear the costs. As between the respective carriers the costs of Dr. Burrows and Brenners' deposition shall be equally borne.
 S/ __________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ __________________ JAMES J. BOOKER COMMISSIONER
S/ __________________ COY M. VANCE COMMISSIONER